UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA ALLESSI,

                              Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                          12-CV-725S

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, and RONALD W. MOSCICKI as
aider and abettor,

                              Defendant.

## I.  INTRODUCTION

Plaintiff commenced this employment discrimination action alleging claims of gender

discrimination, hostile work environment and retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. and New York State Human Rights Law,

N.Y. Executive Law §§ 290 *et seq*.   Plaintiff further alleges a claim against Defendant

Ronald W. Moscicki under 42 U.S.C. § 1983 for deprivation of her federal rights under the

color of law. Presently before this Court are the dismissal motions of Defendant New York

State Department of Corrections and Community Supervision ("DOCCS") and Defendant

Moscicki.[1] The motions are fully briefed and oral argument is unnecessary.   For the

reasons that follow, both motions are granted and the Complaint is dismissed in its entirety.

---

[1]On January 30, 2013, Plaintiff stipulated to the dismissal of this action as against Defendant
Hilda Ancelet. (Docket No. 22.)

## II. BACKGROUND

As alleged in the complaint, Plaintiff is employed as a correction counselor at one of DOCCS' shock incarceration facilities. (¶ 11.) "Throughout the years," Defendant Moscicki, the superintendent of the facility, "has made various derogatory comments referencing females," including referring "to women as 'fucking idiots' and female inmates as 'fucking females.' " (¶ 12-13.)

In May 2010, Plaintiff wore jeans to a training session at which such dress was permissible. (¶ 14.)  Defendant Moscicki called Plaintiff into his office after training and "subjected [her] to a barrage of obscenities for . . . wearing jeans to the training session." (¶ 14.)  In contrast, another counselor with whom Defendant Moscicki was having a romantic relationship, Hilda Ancelet, "was driven to the training by the Superintendent," and she "sat throughout the training with her head on the table and introduced herself stating she was 'hung-over.' " (¶ 15.)  Despite the fact that Defendant Moscicki would have known of Ancelet's condition, nothing was said regarding her representation. (¶ 15.)

A few days later, Ancelet accused Plaintiff of telling other employees that it was her who reported Plaintiff was wearing jeans to Defendant Moscicki, although "Plaintiff had done no such thing." (¶ 16.) Defendant Moscicki then went to Plaintiff's office and yelled at her "to keep her 'fucking mouth shut,' while pointing at her with his finger in an intimidating manner." (¶ 16.)

In June 2010, Plaintiff and three other female employees filed an internal complaint with DOCCS' Office of Diversity Management disclosing the romantic relationship between Defendant Moscicki and Ancelet and alleging hostile treatment based on sex. (¶ 17.) Following the filing, Plaintiff was "subjected to repeated hostility" from Defendant Moscicki

2

and Ancelet; shunned by an office mate; and subjected to the "sarcastic comments" of coworkers. (¶ 18-19.) Plaintiff and the other individuals who complained were referred to "as 'cry babies,' 'bitches,' and 'queens,' as well as [subjected to] glares, smirks, and snide other comments." (¶ 19.)

In September 2010, Plaintiff was informed that her work hours would shift a half an hour in the following month, from 7 a.m. to 3 p.m. to 7:30 a.m. to 3:30 p.m. "due to programmatic changes that would no longer require the Plaintiff to perform 'reception duties.'" (¶ 20.) Although this change had been planned in July 2009, it was not implemented with respect to her schedule "until after she made her internal complaint in June 2010." (¶ 20.) Plaintiff asserts this change was not trivial because she used the time to prepare paperwork, handle inmate family calls, and review inmate folders. (¶ 22.) As per Defendant Moscicki, Plaintiff was the only counselor who reviewed these folders, and prior to the removal of Plaintiff's reception screening duties, Ancelet "would complain [directly to Defendant Moscicki] if the Supervisor asked other counselors to help when there were a lot of screenings." (¶ 22.)

"[I]n December 2010[,] Ms. Ancelet called the Plaintiff a 'white ass fucking bitch.'" (¶ 24.) "Also in December 2010, the Plaintiff was directed to move her office so that Ms. Ancelet and her office mate could have an office with a window." (¶ 25.) Although she complained, "[o]n October 27, 2010 [*sic*] the Plaintiff received a memo directing her to move her office, which she did." (¶ 25.) After she complained to the Diversity Office, she was allowed to move back. (¶ 25.) Ancelet responded by "loudly stat[ing] while in another counselor's office, 'That fucking bitch! I don't want her fucking office. It reeks of her. Just remember, what goes around comes around. She'll get hers!' " (¶ 26.) Defendant Moscicki

3

"on various occasions" also commented "that he is 'not going out without a bang.' " (¶ 27.)

Plaintiff was given additional casework in October 2010, resulting in her having the largest caseload. (¶ 28.)  Although another corrections counselor offered to help Plaintiff, Defendant Moscicki did not allow this. (¶ 29.)

Plaintiff filed a complaint with the New York State Division of Human Rights in March 2011 alleging gender discrimination and retaliation.  On January 27, 2012, the DHR issued a determination that probable cause existed to believe that DOCCS engaged in the complained-of discrimination.  The matter was subsequently dismissed for administrative convenience. Following a requested review, the Equal Employment Opportunity Commission issued a dismissal and notice of right to sue on May 18, 2012.

Plaintiff commenced the present action in this Court on August 1, 2012.  Two of Plaintiff's coworkers also commenced actions alleging similar claims against the same defendants, which have since been dismissed.  See Evanoff v. N.Y.S. Dep't of Corr. & Cmty. Supervision, No. 12-CV-726, 2013 WL 6181853 (W.D.N.Y. Nov. 25, 2013); Korzeniewski v.N.Y.S. Dep't of Corr. & Cmty. Supervision, No. 12-CV-727, 2013 WL 6148076 (W.D.N.Y. Nov. 22, 2012).

### III. DISCUSSION

In their respective motions, Defendants both argue that Plaintiff has failed to state a claim of sex discrimination, retaliation, hostile work environment or one cognizable under 42 U.S.C. § 1983.  Both further argue that Plaintiff's claims under the New York State Human Rights Law ("NYSHRL") are barred by the doctrine of sovereign immunity under the Eleventh Amendment, and must be dismissed.

4

## A.      Sovereign Immunity (NYSHRL claims)

Defendants correctly argue that the NYSHRL claims must be dismissed as against DOCCS and Defendant Moscicki in his official capacity for lack of subject matter jurisdiction. As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.  Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir.2006) (citing Lapides v. Bd. of Regents, 535 U.S. 613, 618-19, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)); see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 67 (1984).  New York has not waived its Eleventh Amendment immunity with respect to NYSHRL claims brought in federal court. Heba v. N.Y.S. Div. of Parole, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007).

Plaintiff argues that, pursuant to Collins v. N.Y.S. Dep't of Corr. & Cmty.. Supervision, No. 5:07-CV-0493 (GTS/DEP), 2012 WL 2563029 (N.D.N.Y. June 29, 2012), Defendants waived sovereign immunity by defending Plaintiff's initial complaint before the Division of Human Rights. (Pl's Mem of Law at 15, Docket No. 9; Pl's Mem of Law at 5-6, Docket No. 24.)  As held in the decision dismissing her coworker's action,[2] however, the reasoning in Collins is flawed.  Korzeniewski, 2013 WL 6148076 at *3. The language of

---

[2]The decision in Korzeniewski was released after the initial briefing of the motions in the present case was complete.

N.Y. Executive Law § 297(9),[3] on which <u>Collins</u> relies, does not create a waiver, but instead "simply places an individual who has received a dismissal of his NYSDHR complaint for the reasons set forth in the statute[, including administrative convenience,] in the same procedural posture that individual would have been in had that individual not initially chosen to proceed before the NYSDHR." <u>Korzeniewski</u>, 2013 WL 6148076 at *3. Accordingly, the NYSHRL claims must be dismissed against DOCCS and as against Defendant Moscicki in his official capacity for lack of subject matter jurisdiction. <u>See generally</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (suit against state official in his or her official capacity is a suit against the state).

Defendant Moscicki further argues that the NYSHRL claims against him in his individual capacity are similarly barred. (Moscicki Mem of Law at 5, Docket No. 20-1.) Defendant Moscicki relies on <u>Shanahan v. New York</u>, which correctly states that individual defendants are not "employers" within the meaning of NYSHRL. No. 10 Civ. 0742, 2011 WL 223202, *11 (S.D.N.Y. Jan. 24, 2011).  However, a state employee may be held liable in his or her individual capacity under N.Y. Executive Law § 296(6) for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by NYSHRL. <u>Lore v. City of</u>

---

[3]N.Y. Executive Law § 297(9) provides, as relevant:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

Syracuse, 670 F.3d 127, 169 (2d Cir. 2012); Nunez v. Cuomo, No. 11-CV-3547, 2012 WL

3241260, *20 (E.D.N.Y. Aug. 7, 2012); Smith v. State Univ. of N. Y., No. 1:00-CV-1454,

2003 WL 1937208, *7 (N.D.N.Y. Apr. 23, 2003). "An individual can be liable under Section

296(6) so long as he 'actually participates in the conduct giving rise to a discrimination

claim.' " Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 304 (E.D.N.Y.

2012) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on*

*other grounds by* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L.

Ed. 2d 633 (1998)).  Plaintiff has alleged Defendant Moscicki's individual liability on an

aider and abettor theory, therefore dismissal of such claims on this ground is unwarranted.

## B.     Failure to State a Claim

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12

(b)(6), this Court must accept all factual allegations in the complaint as true and make all

reasonable inferences in Relator's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493

F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only

to factual allegations and is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to

discriminate against any individual with respect to his [or her] compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2 (a)(1). Although there is no individual liability

7

under Title VII, <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79 (2d Cir. 2010), as noted above, Plaintiff can assert a claim against Defendant Moscicki in his individual capacity as an aider and abettor under the NYSHRL if liability is first established with respect to another. <u>Raneri v. McCarey</u>, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) (an individual cannot aid or abet his own discriminatory conduct).  Claims under the NYSHRL are governed by the same standards and will have the same outcome as claims analyzed under Title VII. <u>See Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 226 n. 9 (2d Cir. 2008).  A complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination, however, it must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 547 (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).  "A claim has facial plausibility when the [relator] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

      1.    <u>Discrimination Based on Sex</u>

In the first and fourth causes of action, Plaintiff alleges that Defendants discriminated against her on the basis on her sex because she "was treated less favorably than male employees." (Compl. ¶¶ 32, 47.) A prima facie case of sex discrimination under Title VII requires a showing that: (1) the plaintiff was a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>Collins v. N.Y.C. Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002). Defendants argue that Plaintiff has failed to identify any adverse employment action or

discriminatory act based on Plaintiff's gender, (DOCCS Mem of Law at 6-8, Docket No. 7-1; Moscicki Mem of Law at 6, Docket No. 20-1), and this Court agrees.

An adverse employment action is a materially adverse change in the terms and conditions of employment. <u>Galabya v. N.Y.C. Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities," such as a termination of employment, demotion with concomitant decrease in salary, or material loss of benefits. <u>Galabya</u>, 202 F.2d at 640 (internal quotation marks omitted). As in her coworker's action, here Plaintiff has also failed to allege "sufficient facts to plausibly suggest that the half hour or the reassignment of cases among corrections counselors constitutes a materially adverse change in the terms of employment." <u>Korzeniewski,</u> 2013 WL 6148076 at *6; <u>see Seale v. Madison Cnty.</u>, 929 F. Supp. 2d 51, 75 (N.D.N.Y. 2013) (a change in an employee's schedule is not, without more, an adverse employment action); <u>Zucco v. Auto Zone</u>, 800 F. Supp. 2d 473, 477 (W.D.N.Y. 2011) (plaintiff's allegation that her "hours seemed to vary greatly" after a meeting regarding her manager's inappropriate conduct toward her insufficient to state materially adverse change in employment). Further, a temporary move from one office to another, a move which Plaintiff concedes was rectified by DOCCS' Diversity Office (Compl. ¶ 25), is insufficient to constitute a material adverse change in employment. <u>Roncallo v. Sikorsky Aircraft</u>, 447 F. App'x 243, 245-46 (2d Cir. 2011), *cert denied*, 132 S. Ct. 1813 (2012) (temporary move from an office to a cubicle does not constitute adverse employment action); <u>Klein v. New York Univ.</u>, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) ("Undesired office assignments are not adverse employment actions.")

Moreover, even if it could be plausibly inferred that the extra caseload assigned to Plaintiff constituted a disproportionally heavy workload, see Lopez v. Flight Servs. & Sys., 881 F. Supp. 2d 431, 441 (W.D.N.Y. 2012) (a disproportionate workload can constitute an adverse employment action where it significantly changes the employees responsibilities, status, or exposure to dangerous conditions), the Complaint fails to plausibly allege that such action took place under conditions giving rise to an inference of discrimination. Initially, although Plaintiff alleges that she "was treated less favorably than male employees," (Compl. ¶¶ 32, 47), no such male is identified at any point in the Complaint. Manolov v. Borough of Manhattan Cmty. Coll., 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013) (discrimination claim dismissed for failure to allege any facts suggesting that plaintiff was treated differently than other students); Hilton v. Bedford Paving, LLC, 769 F. Supp. 2d 92, 101 (W.D.N.Y. 2010) (no claim for disparate treatment stated where African American plaintiff failed to plausibly allege that he was treated differently from any similarly-situated white employee).

Instead, Plaintiff argues that she was treated less favorably than another female corrections counselor who was in a romantic relationship with a supervisor.  Disparate treatment caused by such a relationship, although unfair, does not fall within the purview of Title VII.  DeCintio v. Westchester Cty. Med. Ctr., 807 F.2d 304, 308 (2d Cir. 1986), cert denied, 484 U.S. 825 (1987); Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 517 (S.D.N.Y. 2010); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1156 (E.D.N.Y. 2003).  Plaintiff was neither discriminated against because of her status as a female nor subjected to unwelcome sexual advances herself, therefore no claim for sex discrimination has been plausibly alleged.  See Korzeniewski, 2013 WL 6148076 at *7; Perks, 251 F.

10

Supp. 2d at 1156.

    2.    <u>Hostile Work Environment</u>

Plaintiff's second and fifth causes of action allege that she was subject to a hostile work environment on the basis of sex.  A hostile work environment exists where the complained of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex. <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007).  To avoid dismissal of a hostile work environment cause of action for failure to state a claim, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' " <u>Patane</u>, 508 F.3d at 113 (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003)).

Here, as concluded above, Plaintiff has not alleged harassment based on her sex, but on the romantic relationship between her coworker and her supervisor. <u>DeCintio</u>, 807 F.2d at 308. Further, the Complaint alleges only sporadic comments, such as Defendant Moscicki referencing females as "fucking idiots" at an unspecified time and "sarcastic comments" being made following Plaintiff's filing of an internal complaint. (Compl. ¶¶ 13, 19.)  Even considered collectively, these comments are insufficiently "regular, humiliating or offensive to rise to the level of a hostile work environment." <u>Matthews v. Corning Inc.</u>, 737 F. Supp. 2d 133, 136 (W.D.N.Y. 2010) (allegations included sexist comments made by a named defendant and a coworker's spreading of a rumor that the plaintiff had engaged in an affair); <u>see also</u> <u>Vito v. Bausch & Lomb</u>, 403 F. App'x. 593, 596 (2d Cir. 2010) (sporadic use of abusive language and teasing insufficient to create a hostile

environment); <u>Korzeniewski</u>, 2013 WL 6148076 at *6 (Defendant Moscicki's statements that women should not perform "drill and ceremony" and occasional inappropriate comments over the course of thirteen months was not objectively severe or pervasive); <u>Evanoff</u>, 2013 WL 6181853 at *4 (Defendant Moscicki's two specific derogatory comments and allegations of general instances of his lost temper insufficiently severe or pervasive to support hostile work environment claim).

    3.   <u>Retaliation</u>

Plaintiff's third and sixth causes of action allege that she was retaliated against for filing complaints of disparate treatment and a hostile work environment to DOCCS' Diversity Office.   To state such a claim for retaliation, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." <u>Patane</u>, 508 F.3d at 115.

Plaintiff alleges that she and her coworkers filed an internal complaint about Defendant Moscicki's derogatory comments and his romantic relationship with Ancelet in June 2010. (Compl. ¶ 17.) Three months later, in October 2010, Plaintiff's work hours were shifted by half an hour, she was given additional casework, and she was made to temporarily move her office. (Compl. ¶¶ 20, 25, 28.)   As concluded above, these allegations are insufficient to constitute adverse employment actions. For the same reasons, this Court finds that the allegations also do not plausibly state actions that " 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " <u>Lundy v. Town of Brighton</u>, 732 F. Supp. 2d 263, 271 (W.D.N.Y. 2010) (quoting <u>Hicks v.</u>

Baines, 593 F.3d 159, 169 (2d Cir. 2010)); Cunningham v. N.Y.S. Dep't of Labor, No. No.

1:05-CV-1127-DNH-RFT, 2010 WL 1781465, *6 (N.D.N.Y. Apr. 30, 2010) (relocation of

plaintiff's office, even if retaliatory, "falls squarely within the class of trivial harms that . . .

Title VII was not intended to protect against"), aff'd 429 F. App'x 17 (2d Cir. 2011).  Thus,

even without considering the tenuous temporal relationship between Plaintiff's complaint

and the alleged retaliatory acts, the retaliation claims are properly dismissed.

       4.     § 1983 Claim Against Defendant Moscicki

      In her seventh and final cause of action, Plaintiff alleges that Defendant Moscicki,

while acting under the color of law, deprived her of "her right to be free of retaliation under

[] Title VII." (Compl. at 13 ¶ 14.)  "[A] § 1983 claim is not precluded by a concurrent Title

VII claim[] when the former is based on substantive rights distinct from Title VII." Saulpaugh

v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993), cert denied, 510 U.S. 1164 (1994).

Here, however, Plaintiff does not distinguish her § 1983 claim from her Title VII retaliation

claim, therefore this cause of action must also be dismissed.  Ericson v. City of Meriden,

113 F. Supp. 2d 276, 289-90 (D. Conn. 2000), aff'd 55 F. App'x 11 (2d Cir. 2002); see

Moche v. City Univ. of N.Y., 781 F. Supp. 160, 168-69 (E.D.N.Y. 1992) (retaliation claim

could not be brought under § 1983 where it could have been remedied exclusively through

Title VII).

## IV. CONCLUSION

      Plaintiff's NYSHRL claims must be dismissed as against DOCCS and Defendant

Moscicki in his official capacity for lack of subject matter jurisdiction.  Further, Defendants

have established that Plaintiff's claims must otherwise be dismissed for failure to state a

claim, and both motions to dismiss are therefore granted.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant DOCCS' Motion to Dismiss (Docket No.

7) is GRANTED;

FURTHER, that Defendant Moscicki's Motion to Dismiss (Docket No. 20) is

GRANTED;

FURTHER, that the Complaint is dismissed against all Defendants in its entirety;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated: April 22, 2014
         Buffalo, New York

                                                    /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                       Chief Judge
                                              United States District Court